**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jul 08 2014, 9:58 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID P. MATSEY**
Osan & Patton, LLP
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JOHN R. EDWARDS,                          )
                                          )
    Appellant,                        )
                                          )
      vs.                          )    No. 64A03-1310-DR-423
                                          )
MARYANN EDWARDS,                          )
                                          )
    Appellee.                         )

APPEAL FROM THE PORTER SUPERIOR COURT TWO
The Honorable William E. Alexa, Judge
Cause No. 64D02-0708-DR-007342

**July 8, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

John R. Edwards (Father) appeals the denial of his Petition to Emancipate and Modification of Custody and Support, challenging that ruling as the sole issue on appeal.

We affirm.

Father and Maryann Edwards (Mother) were married on April 24, 1987. Four children were born of the marriage, including R.E., born October 8, 1988, S.E., born March 6, 1991, M.E., born September 19, 1993, and A.E., born September 20, 1995. On August 9, 2007, Mother filed a petition for dissolution. On June 19, 2009, the court approved an agreement (the settlement agreement) submitted by the parties "on all outstanding issues before the Court" and entered a decree of dissolution consistent with those terms. *Appellant's Appendix* at 19. The parties agreed that Mother would have primary physical custody of the four children, although they also agreed that R.E was by then "able to make decisions on his own and be responsible for the care and maintenance of himself without the need for support of either parent." *Id*. at 20. Mother would have sole legal custody of the three younger children. Because of the issue appealed herein, we reproduce the portion of the decree pertaining to child support, as follows:

17. For the purposes of child support computation, the parties stipulated as follows:

  a. That Husband is employed with a gross weekly income of Nine Hundred Sixty-Eight Dollars ($968.00) per week.

  b. That Wife is employed with a gross weekly income of Two Hundred Sixty Eight ($268.00) per week.

  c. That there are currently no work-related child care expenses.

2

> d. That Husband shall continue to provide health insurance for the children through his employment.

18. That by agreement of the parties, Husband shall pay support in the amount of Two Hundred Fifty Dollars ($250.00) per week. Said support should be paid directly to Maryann Edwards every Friday by 5:00 p.m. The parties recognize that this is a non-separable order of support. Unless otherwise emancipated or modified by order of this Court, this support order shall remain in effect, in full, until the youngest child reaches the age of twenty-one. This support provision is made, in part, in lieu of consideration that Wife is waiving her interests in husband's pension.

*Id.* at 22-23.

On November 13, 2012, Father filed a petition to emancipate M.E. and to modify support. At that time, M.E. had turned eighteen years of age, which was the basis upon which Father sought emancipation. Also, A.E. had been living with her boyfriend since May or June 2012, but expressed a desire to move into Father's home, which she eventually did in December 2012. This and the emancipation of M.E. were the bases for his petition to modify support. With respect to child support, Father sought a retroactive abatement of support from the date that M.E. turned nineteen years old, and he sought to impose a support obligation upon Mother, retroactive to the date the petition for modification was filed, which was several weeks before A.E. moved back into his home.

On April 2, 2013, the trial court conducted a hearing on Father's motion. Father, Mother, Mother's attorney during the divorce proceedings (Father was not represented by counsel at that time), and Robert Jones, the father of A.E.'s boyfriend, testified at the hearing. On June 7, 2013, the court entered an order denying Father's petition upon its finding that the settlement agreement "was a binding contract and not subject to being

3

modified. To do otherwise, would result in an unjust result." *Appellant's Appendix* at 8-9. Father thereafter filed a motion to correct error, arguing that the court erred in finding that the support provision in the decree was part of a contract and not subject to modification. The trial court denied the motion to correct error. Father appeals the denial of his petition to modify support.

We note that Mother did not file an appellee's brief. When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *State v. Akins*, 824 N.E.2d 676 (Ind. 2005). In the absence of an answer brief from an appellee, we will not undertake the burden of developing legal arguments on the appellee's behalf and may reverse if the appellant establishes prima facie error, which is "error at first sight, on first appearance, or on the face of it." *Front Row Motors, LLC v. Jones,* 5 N.E.3d 753, 758 (Ind. 2014) (quoting *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999)).

Although presented in the form of a motion to emancipate and modify support, the issue before us involves exclusively the interpretation of a settlement agreement. Father contends the trial court erred in interpreting the settlement agreement in such a way as to foreclose the possibility of modifying his support obligation without Mother's consent. On the other hand, Mother contended below, and the trial court held, that the settlement agreement constituted a binding contract with respect to the amount of child support Father was obligated to pay.

Settlement agreements are contractual in nature and binding upon the parties if approved by the trial court. *Ryan v. Ryan*, 972 N.E.2d 359 (Ind. 2012). Generally, a trial

4

court does not have authority to modify a property settlement agreement, although it certainly is empowered to resolve a dispute concerning the interpretation of a settlement agreement. *Id.*; *see* Ind. Code Ann. § 31-15-2-17 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014). The parties' opening remarks at the modification hearing confirm that they were seeking just that, i.e., clarification as to whether Paragraph 18 permitted modification of support without Mother's consent.

Because settlement agreements are contractual in nature and binding if approved by a trial court, when a dispute between ex-spouses stems from conflicting interpretations of a settlement agreement, the court's task is one of contract interpretation. *See Ryan v. Ryan*, 972 N.E.2d 359. Thus, a settlement agreement is "'interpreted according to the general rules for contract construction.'" *Id*. at 364 (quoting *Bailey v. Mann,* 895 N.E.2d 1215, 1217 (Ind. 2008)). Generally speaking, these include the following: "[U]nless the terms of the contract are ambiguous, they will be given their plain and ordinary meaning. Clear and unambiguous terms in the contract are deemed conclusive, and when they are present we will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions." *Id.* (quoting *Shorter v. Shorter,* 851 N.E.2d 378, 383 (Ind. Ct. App. 2006)). Accordingly, we must first determine whether Paragraph 18 is ambiguous.

On the question of whether the settlement agreement permitted modification of Father's support obligation, we need consider only Paragraph 18. It provided that Father's obligation, as set out elsewhere in the settlement agreement, was to continue until the youngest child's twenty-first birthday "[u]nless otherwise emancipated or modified by

5

order of this Court." *Appellant's Appendix* at 23. On the face of it, this language plausibly appears to contemplate the possibility of modification. This is the interpretation of Paragraph 18 that Father urges us to adopt. On the other hand, Paragraph 18 goes on to provide that this particular support provision was made "in lieu of consideration" that Mother was waiving her interest in Father's pension. *Id.* In other words, Paragraph 18 provided that this child support arrangement constituted a bargained-for exchange. Presumably, Father's pension would not decrease as time passed and, therefore, an abatement of his support obligation before the contemplated termination date would result in a diminishment of that for which Mother had bargained, i.e., compensation for relinquishing her interest in Father's pension. We find each interpretation reasonable and entirely inconsistent with the other. Because it is susceptible to more than one reasonable interpretation, we find that Paragraph 18 is ambiguous.

"Our Supreme Court has determined that the dissolution court that enters a property settlement agreement is in the best position to resolve questions of interpretation and enforcement of that agreement and thus retain jurisdiction to interpret the terms of their property settlement agreements and to enforce them." *Shorter v. Shorter*, 851 N.E.2d at 383. Nevertheless, when reviewing a trial court's interpretation of the meaning of a settlement agreement, we apply a de novo standard of review because the construction of the terms of a written contract is a pure question of law. *Shorter v. Shorter*, 851 N.E.2d 378.

It appears that at the time of dissolution, there were very few marital assets. Indeed, the parties lost their house via foreclosure and declared bankruptcy during the pendency of

6

the dissolution proceedings. At the time of dissolution, it appears that the marital property consisted of two vehicles, items of personal property, and Father's pension. Mother testified at the modification hearing that it was clear that Father's pension was very important to him and that "he didn't want to give it up at all." *Appellant's Appendix* at 94.

Paragraph 18 provided that Father's support obligation was "non-separable". *Id.* at 22. Father, who was not represented by counsel during the dissolution proceedings, appeared not to know at the modification hearing precisely what that term meant in this context. When Mother's counsel asked the term's meaning, Father could not provide a definition that did not contain the root word. He could define it only as meaning "unseparable." *Id.* at 61. When pressed to define the word in a way that did not use the root word, Father explained, "I'm not familiar with legal terms." *Id.* at 62. Later, however, he did acknowledge that he understood at the time he signed the settlement agreement that Paragraph 18 would require him to pay the same amount of support until the youngest child turned twenty-one even though, by that time, the other two children would have been emancipated.

Mother, on the other hand, had a clear conception of the meaning of the term – at least to her. She explained that it was "like a property settlement with child support included in it and as each child got older and either moved out, you know, one went to the military, was married, that my support would go down and my interest in the pension would go up." *Id.* at 94. In other words, the $250-per-month payment represented a combination of child support and payment to Mother for her portion of Father's pension, with the portion of the total payment allocated to paying her interest in the pension increasing as each child

7

was emancipated. This is entirely consistent with her dissolution attorney's explanation of the circumstances and purpose of Paragraph 18, as reflected in the following:

> Well it was somewhat unique. Aside from not wanting the divorce, Mr. Edwards' biggest priority was preserving his pension which of course was impossible because there was nothing to offset it. Mrs. Edwards' biggest priority was some kind of fit [sic]. She knew she was going to struggle financially once the divorce occurred, meaning bills were going to be difficult, so income was important to her.
> So as it worked out, there was a way to preserve Mr. Edwards' pension and meet Miss [sic] Edwards' needs. We did not get the pension evaluated. It wasn't worth it money wise and so as an offset I believe there was [sic] four children if I'm not mistaken. We calculated support based on the guidelines in effect at the time for four children and then we said the amount would stay constant until the youngest child was 21 which was the age of emancipation at the time the decree was filed. So gradually more of that payment would be allocated to a buyout of the pension and less to child support as each child became emancipated.

*Id.* at 79. Trial counsel was asked why the language "[u]nless otherwise emancipated or modified by order of this Court" was inserted into Paragraph 18. *Id.* at 23. He explained: "that was probably a cut and paste from another decree that specified language of "'unless otherwise modified'". *Id.* at 84. He continued that including that phrase was "not the best draftsmanship", and that it was the intention of the parties that support could not be modified, notwithstanding the use of this phrase. *Id.* at 84-85. Trial counsel confirmed that Father "was dead set and his biggest priority was protecting as much, if not a hundred percent, of his pension." *Id.* at 81.

Trial counsel acknowledged that the traditional way to handle a situation like this, i.e., one involving child support and the allocation of a pension, would be to handle the two matters separately. The trial court could order the pensioner to pay a certain amount to the divorcing spouse to compensate the latter for his or her share of the pension, while entering

8

a separate order for child support. In fact, trial counsel stated that "in hindsight that probably would have been the better way." *Id.* at 84. Nevertheless, we can appreciate trial counsel's effort to minimize the financial strain caused by the dissolution proceedings upon individuals who at the time were already dealing with extremely difficult financial circumstances. He crafted an agreement that saved the cost typically associated with valuing Father's pension, preserved what appears to have been Father's highest priority at the time, which was to preserve his pension intact, and addressed Mother's need for income and provided compensation for her portion of Father's pension, which she agreed not to pursue through more traditional means.

In the end, trial counsel testified that it was "clear at the time" that the agreement described in Paragraph 18 was an effort to minimize legal costs associated with the dissolution in a situation where there were not many assets. *Id.* at 83. There was testimony at the hearing supporting the conclusion that the parties understood that Father's child support obligation represented a combination of child support and payment to Mother for her interest in his pension. There was also evidence supporting the conclusion that although the amount of the payment would be constant, the amount allocated for the pension would increase as each child left the home. Finally, there was evidence to support the conclusion that Father's child support obligation would continue until the youngest child turned twenty one years of age, at which time support would cease and Mother, by then, would be fully compensated for her interest in Father's pension.

The trial court's denial of Father's petition for modification was based upon its conclusion that the support arrangement set out in the settlement agreement was not subject

9

to modification. We are reluctant to be understood to imply categorically that the support arrangement described in this settlement agreement would not have been modifiable under any set of circumstances. For instance, the arrangement clearly contemplated that all three children who were the subject of Father's support obligation would survive to the age of twenty-one. Because the portion of Father's $250-per-month payment allocated to child support (versus pension) was much greater at the beginning of the period during which he was obligated to pay support, modification may have been in order if a child had died before the age of twenty-one. The earlier in the seven-year period of support payments that such occurred, the greater the justification for modification of support. Happily, however, that did not occur and the future unfolded as anticipated, at least in that respect. Under these circumstances, we agree with the trial court's conclusion that Father's child support was not modifiable.

In summary, we conclude that Paragraph 18 is susceptible to more than one interpretation and therefore is ambiguous. In construing this ambiguity, we are confronted with the question of whether the parties intended that Father's child support obligation was modifiable. The best interpretation of this provision, as gleaned from the words employed in the provision and considering the evidence presented at the modification hearing, is that the parties intended that Father's support payment was to continue for a specific period of time. Moreover, these payments represented not only the payment of support, but also compensation to Mother for her interest in Father's pension, which she declined to pursue through more traditional means. Therefore, Father has failed to make a prima facie case that the trial court erred denying his petition to modify.

10

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.